SABRINA GARCIA
139 West Elwood
Phoenix Az. 85041
Pro se

```
FILED ____ LODGED
RECEIVED ____ COPY

DEC 29 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SABRINA GARCIA, L. G., A. G., J.G., K. G.<br>　　　　Plaintiff,<br>Vs.<br>The Arizona Department Of Economic Security, Child Safety and Family Services, Child Protective Services, Linda Esparza, Alma Aguirre Jackie Cirricione, Lynn Heart Ron Siegel, Elizabeth Overholt Karin Cather, Rosa Chavarria Dr. Glen Moe, Karina Lopez Tammy M. Ruiz, Brian Bowman<br><br>Nancy Galvin, Rosangela Alicea Stephen Woo, Allyson L. Stefaniuk Leticia Holguin, Armando Holguin Ms. Rachel Lee, Marie Toni Baeza Jeffery Meyer, Judge Uderal Steven berley, David Lee Unkown Parties, Domingo Baeza<br>　　　　Defendants | Case No  CV-15-02637-PHX-SRB<br><br>CIVIL ACTION<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C . § Sec 1983/1985<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

Now come Plaintiff's, as and for their complaint, alleges and asserts the following claims against the Defendants in the above entitled action:

## JURISDICTION

1. This action arises under:

    a. The Constitution of the United States, Fifth Amendment (right to due process and equal protection of the law); Article IV, § 1 (privileges and immunity clause); and under:

    b. Title 28 United States Code § 1331, which provides that anyone stating facts raising a federal cause of action has the right to file in the district courts a civil action stating claims arising under the Constitution, laws, or treaties of the United States.

    c. Title 28 United States Code § 1343, which provides a federal court forum in which citizens may seek redress from the deprivation of rights, privileges and immunities under color of state law.

    d. Civil Rights Act, Title 42 United States Code §§ 1983-1986, that provides a federal remedy to anyone suffering from violations of his civil rights perpetrated under color of state law including: Conspiracy to interfere with civil rights; Deprivation Of Rights;

    e. Title 42 U.S.C. § 1985 Conspiracy to interfere with civil rights, based upon the conspiracy by the defendants that repeatedly violated plaintiff's civil rights.

    f. Title 42 United States Code § 1986, which provides for damages from those defendants who had knowledge of the violations of plaintiff's civil rights, who had the duty and the ability to prevent or aid in the prevention of them, and who failed to perform that duty.

> (1) Social workers (and other government employees) may be sued for deprivation of civil rights under 42 U.S.C. § 1983 if they are named in their 'official and individual capacity'. *Hafer v. Melo, (S.Ct. 1991)*
>
> (2) State law cannot provide immunity from suit for Federal civil rights violations. State law providing immunity from suit for child abuse investigators has no application to suits under § 1983. *Wallis v. Spencer, (9th Cir. 1999)*
>
> (3) If the law was clearly established at the time the action occurred, a police officer is not entitled to assert the defense of qualified immunity base on good faith since a reasonably competent public official should know the law governing his or her conduct. *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)*
>
> (4) Immunity is defeated if the official took the complained of action with malicious intention to cause a deprivation of rights, or the official violated clearly established statutory or constitutional rights of which a reasonable person would have known. *McCord v. Maggio, (5th Cir. 1991)*
>
> (5) A defendant in a civil rights case is not entitled to any immunity if he or she gave false information either in support of an application for a search

warrant or in presenting evidence to a prosecutor on which the prosecutor based his or her charge against the plaintiff. *Young v. Biggers, (5th Cir. 1991)*

g. Title 18 United States Code §§ 1961-1964. The Racketeer Influenced and Corrupt Organizations act (hereafter "RICO") claim arises from the pattern of multiple predicate acts perpetrated by defendants over a 8-year span. The predicate acts of racketeering by multiple defendants affected the civil rights of defendants.

i. Declaratory Judgment Act, Title 28 United States Code §§ 2201 and 2202, which provides for district courts to declare rights and legal relations that are in controversy, and provide whatever remedies are appropriate.

j. Title 18 United States Code § 4. This federal crime reporting statute requires any person who knows of a federal crime to promptly "report it to a federal judge" or other officer.

k. right to be free from unreasonable searches and seizures.

l. malicious abuse of process.

m. false arrest and imprisonment

n. negligence

o. intentional infliction of emotional distress

p. The matters in controversy exceed ten million dollars.

## VENUE

2. Venue is based upon the following:

a. This court has jurisdiction over this action pursuant to 28 U.S.C § 1331 as it involves claims under TITLE 42 UNITED STATES CODE, CHAPTER 21 - CIVIL RIGHTS

b. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391 (1)(2)(3) as the Plaintiff's and Defendants reside in this district, and the violations of law complained of herein occurred in this district.

c. A number of the wrongful acts and federal causes of action occurred while plaintiff was a resident of the District of Arizona.

d. Plaintiff resides in Arizona and consider Arizona their domicile.

e. The children that were wrongfully taken from Plaintiff were located in the District of Arizona.

f. All defendants participated in wrongful conduct that affected District of Arizona interests, including property and plaintiffs residences and domicile.

g. Venue exists in any location for reporting criminal activities to a federal judge, as required by federal crime reporting statute, Title 18 U.S.C. § 4.

h. Venue lies in this district pursuant to 28 U.S.C. §§ 1391(a), (b), (e); 1392(b); 1402(b).

i. CPS Workers and The Arizona Department Of Economic Security in Arizona have feloniously retaliated against plaintiff for seeking to report these crimes. These retaliatory acts were felonies under Title 18 U.S.C. §§ 1505, 1510, 1512, 1513(b). They are also felonies by obstructing justice under Title 18 U.S.C. §§ 2, 3,

## PLAINTIFF PARTIES

1. SABRINA GARCIA
2. L. G.
3. A. G.
4. K. G.
5. J. G.

## DEFENDANT PARTIES

1. The Arizona Department Of Economic Security
2. Child Protection Services, Child Safety and Family Services
3. Linda Esparza
4. Alma Aguirre
5. Jackie Cirricione
6. Lynn Heart
7. Ron Siegel
8. Elizabeth Overholt
9. Karin Cather
10. Rosa Chavarria
11. Dr. Glen Moe
12. Karina Lopez
13. Tammy M. Ruiz
14. Brian Bowman
15. Nancy Galvin
16. Rosangela Alicea
17. Stephen Woo
18. Allyson L. Stefaniuk
19. Leticia Holguin
20. Armando Holguin
21. Ms. Rachel Lee
22. Marie Toni Baeza
23. Jeffery Meyer
24. Judge Uderal
25. Steven berley
26. David Lee
27. Unkown Parties
28  Domingo Baeza

## PRELIMINARY STATEMENT

3. This action raises multiple federal causes of actions for which federal judges have a mandatory responsibility to provide a federal court forum and relief. Plaintiffs, have been deprived of personal and property rights, and civil rights in direct and repeated violations of due process of law. Although all allegations must be accepted as true at this stage of the pleading, most of the allegations are stated in attached

Affidavits, exhibits, and plaintiffs request that judicial notice be taken of these Affidavits.

Further, during discovery, this evidence will be entered into these proceedings.

4. Plaintiffs re-alleges and incorporates by reference each and every allegation contained in Paragraph 1 through 3 above, inclusive, as though fully set forth.

## STATEMENT OF FACTS

5. L. G. , was born on June 4th 2003,

6. A. G., was born on July 26, 2004

7. J. G. , was born on July 2nd, 2007

8. K. G. , was born on_July 17th , 2009

9. CPS(Children Protective Services) open a case in November 2009, L. school had called Sabrina Garcia to say they needed to talk to her about L. . Sabrina Garcia went to the school and was informed that L. had informed the school she had been hit with a toilet paper holder. The school ran an investigation, Informed CPS and found that L. was hit by a backpack, by a fellow student at school. CPS, the school, the medical report, all agreed this is what occurred, and that there was NO abuse by Sabrina that occurred at home or any where else.

10. Later in December an officer came to the school claimed that L. had been hit that day by Sabrina with a toilet paper holder. His final report claimed he went to the home but the meeting had actually occurred at the school. Even thought he learn that L. was hit by fellow school and it happen in November. The officer never put this in his report. Alma Aguilar Garcia from CPS called several days later to inform Sabrina CPS has opened case based on this police report. She asked to come to the house and Sabrina Garcia granted her the right to visit the home.

11. Alma Aguilera Garcia came to the home with a young lady around the age of 19 or 20. Alma sat down on the couch asked if the girl could search the home, Sabrina Garcia said "okay". The first words that came out of her mouth were that "Sabrina had committed a crime", and Alma read Sabrina the Miranda rights. Her dad John Garcia was present, he questioned her, on her Legal ability of reading the Miranda rights Alma said "she can do whatever she wants", Sabrina dad also asked Alma if Sabrina needed a lawyer she said "no" her dad advised Alma that the conversation and everything was over and that she needed to leave. At that point she had asked the young girl to strip-search the children Sabrina refused to allow her to do such a thing without a court order, or without any probable cause. Alma said "she can do whatever she wants, and she did have the right to search strip-searched children

and she would have her arrested right there and then if Sabrina objected." At that point Sabrina asked her to leave. She refused to leave; she told her Sabrina she was opening a CPS case because she had hit her daughter with a toilet paper holder and that she would have to go into a six months program.

12. Alma Aguilera Garcia wrote her report that Sabrina's home was well kept and had lots of food. Alma neglected to mention the incidents of reading Sabrina the Miranda Rights or the strip searching of her children. Alma wrote her report about the school incident that she had abused her daughter in spite of the fact that CPS and the school's report stated otherwise. Her report indicated that the people who did the original report didn't know what they were doing and that they didn't know their job. Yet CPS relies on those reports for their cases. The reports were never entered into the court record as far as the courts were concern they never existed. She filed in a report that the children had missed 65 days a school, yet the school's file showed that they only missed one day an un-excused, and 16 days for medical reasons. Alma never said in her report who the girl was that was with her.

13. Alma Aguilera Garcia put Sabrina on a family preservation program, sent CPS to the house once or twice a week in attempt to find something. On March 26th 2010 family preservation for CPS brought her ex-boyfriend Domingo with them at which time they told Sabrina, he was there to visit his daughter and I had no rights to deny him visitation, in spite of fact of a restraining order for him not to be there. They asked for Sabrina to give them Tony Baeza phone number and address which was Domingo's foster mother. Which she did, then three days later Domingo shows up at Sabrina's house, screaming at her that CPS is taking away his daughter and her children from Sabrina. Sabrina told Domingo to leave and not to return. As Sabrina showered he breaks in to the house through a bedroom window, He beats on her. Sabrina runs out of the house and calls the police, unfortunately when the police show up he is gone. In the police report it wrongly indicates that Sabrina, then the domestic violence occurred. The report that Alma Aguilera Garcia files is completely different than the police report she explains in her report that she was present to see Domingo hit her. The report also indicates that he climbed thru the window to gain entry, but at the time she wrote the report the police report had not yet been written. One must conclude she was in contact with Tony Baeza to have inside knowledge of the events that occurred on March 30, 2010

14. On March 31, 2010, Alma Aguilera Garcia came to the home of Sabrina Garcia, one of Sabrina's friends was present at that time. Alma spoke freely in front of him stating, they would have a TM meeting on April 8, 2010 in regards to taking away Domingo's rights. So he couldn't bother her anymore and that CPS was not taking Sabrina's children from her.

15. On April 8, 2010, Sabrina went to TM meeting at which time Alma informed Sabrina that she was taking her children away because of domestic violence. She asked Alma for my children and Sabrina asked her she had a court order. She said "I don't need a court order I can do whatever I want." Sabrina called her dad and her dad spoke to Alma Aguilera Garcia. Alma Aguilera Garcia told her dad that she could do what she wants. She took Sabrina's phone and walked away, calling every number on the phone to find out where the children were at. She sent someone to pick up the children who were with their godparents. It took 8 day for Alma Aguilera Garcia to take the children this shows the children were not in immediate danger and she then proceeded to give false testimony to the court that they where.

16. A CPS worker Stephen Woo and Lynn Heart went to pick up the children at McDonald's in Glendale AZ. He had no Court order; he informed and threatens the godparents that if they didn't give him the children he would place them under arrest. They refused; he grabbed the children and took the children even though they said no. In his report he states that he had picked up the children from the mother and the father and they were present at the time, they were not present. Sabrina was at CPS offices.

17. Alma Aguilera Garcia on May 8, 2010 upon taking the children to the foster mother's home told the children that foster mother and the foster father was there mommy and daddy and they were not going home ever. From that point on no matter what the children said about the foster parents it was reflecting the Sabrina. The mother challenge that with CPS and her attorneys and said there was an improper act she called Gov.'s office and they said that was a violation of CPS's rules yet Alma Aguilera Garcia deliberately and willfully violated that rules so that whatever the foster parents did it would seem that whatever child told anyone it was a "mommy and daddy", CPS would say and report Sabrina did, even though it was the foster parents.

18. On April 13 a hearing was held to see if CPS had probable cause. At that time Alma Aguilera Garcia asked the judge for a court order to **pick up** the children telling the judge that she didn't have the children yet. They had illegally taken the children without a court order or probable cause. Her document stated that it was "abuse", because of domestic violence although Sabrina was the VICTIM not the perpetrator that did not matter to CPS of Arizona.

19. Alma Aguilera Garcia had the police officer write a supplementary report to the domestic violence that happened on March 30, 2010. The officer sat down with the children L. and A.. Then wrote a report and added expanded on the domestic violence. From the time she sat down with the children it took her 12 days to write a 35 line report. So far there is no tape recording of this interview. No second police officer to verify what was said. There's a follow-up of the detective who basically did

not find that any of it was true. She was not able to interview the children for the foster parents or Alma Aguilera Garcia of CPS wouldn't let her.

20. The judge ordered that CPS could not do anything with these children without prior consent by the mother. The judge ordered that they couldn't cut their hair, take them anywhere without the mother's permission or limit visitation, and monitor her phone calls when she spoke to her children. Yet the foster parents and Alma Aguilera Garcia for CPS still disobeyed the Judges ruling.

21. Sabrina took a CPS worker with her to get her son's hair cut. When the barber started to cut his hair, they notice that her son had been abused. He had various strap marks on his body they brought it to the attention of the CPS worker who stated that her mother did it but the child had been away from home and with the foster parents for more than a month it was reported to the courts and at that time the foster parents and a CPS worker Linda Esperanto covered up the abuse of the four children.

22. Immediately after that incident Sabrina was accused by the foster mother of abuse. The foster mother said "Sabrina whispered in her daughter's ears and threatened to come in kill her." The foster mother also accused Sabrina of molesting her children. In May CPS worker Linda Esperanto sent an email to the foster mother telling her they had no case that they needed something MORE, that is when the molestation came into play. Although CPS had taken the children for medical checkup, and the children were not molested they still added that to the case. Somewhere in June they created a video tape at a session in the foster mother's home, they did not invite a police officer or the mother to the session. The session was to investigate molestation. They call L. and A. into the living room and ask them to show them How to do a sex act. They wrote all their documents up and went to the judge. The judge explained to Linda Esperanto why they had violated the law; and they also went to the Phoenix police department and ask them to run a full investigation. The Judge had informed them that when investigation was over. They should stop and cease what they were doing, and if it can came to point that nothing had happened, that the mother would resume her visitation. The police department ran it full investigation. Sabrina asked to speak to the police officer. Linda Esperanto of CPS said no. Sabrina couldn't speak to the police officer so Sabrina had to find out on her own who the police officer was and made arrangements for an interview and she took a lie detector test. The final police report was given to CPS on February 2011 that showed that there was no molestation and that the foster parents had coached the children what to say. In spite of that, CPS went on to take away Sabrina rights and convict her of molestation in Family Court; no evidence was presented to the judge, BECAUSE there was no molestation. CPS refused to give her any documents or discovery. The

Judge ordered them to turn over the medical records of the children and all the records that they had. Till this day they have never done that, Linda Esperanto refuse to do so. <u>Any statue of Limitations argument by the defendants becomes moot as they intentionally concealed the fact finding process from the</u> Plaintiffs . Equitable tolling, this principle of law stating that a statute of limitations shall not bar a claim in cases where the Plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.

It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. However, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation. In this case the Defendants willfully committed fraud in their case in chief and by so doing deprived the Plaintiffs their Constitutional rights.

They gave the attorneys bits and pieces of discovery but not the full records. They cherry picked what documents and discovery they forwarded to the Plaintiffs. As a CPS said they can do anything they want and write anything they want, the Courts will believe them. She went through the first trial, and at that time the Judge found that she was wrong seeing her boyfriend. She was ordered to do services. The judge ordered the children dependent upon the state and upon the mother. In spite of the fact that Linda Esperanto and CPS and Karin Carter had full knowledge she was innocent of molestation they went to a judge who never returns children if there's molestation and the falsified every record to make sure that she had no chance of getting her children back. CPS denied Sabrina and her children their civil rights.

23. On March 30, 2010 and June 21, 2010 the Day Cps Investigated and Interviewed the Children on Private Property without Exigent Circumstances or Probable Cause.

24. Cps removed the children on April 8, 2010 ; No persons may not be "seized" without a court order or being placed under arrest.

25. Cps used false documents of Sabrina Deann Garcia, Knowingly in court proceedings to obtain an outcome that tainted those Court proceedings. They also gave Dr.Glen Moe Sabrina( Deann Garcia's records) to evaluate Sabrina Garcia and children which slanted his report to the Court.

26. Cps. removed the children on April 8th 2014, of the Non-offending Parent. An Unconstitutional Practice for Cps to Remove Children Solely Because They Saw a Parent Was a Victim Of Domestic Violence.

27. Cps knowingly deprived children of proper health care. The Garcia Family has a hereditary disease "Melas", this needs to be watched and treated, this has not occurred. "Not in the best interest of the children." L. had four seizures in the foster parents care, J. was 50lb when he was taken by CPS, in CPS Care 2yrs later he was 24lbs. He was not taken to his doctor's appointment and Sabrina was not notified about his health. In the foster parents care Sabrina's daughter A. fell off the back of their moving truck and was not taken to a doctor. Any damages that she may have incurred will cause serious problems for her in the future with her Melas disease.

28. Cps knowingly made false and misleading statement to the Court in proceedings that ended with the result of removing the children and not seeing their mother or going home.

29. Linda Esparza a Social worker for Cps participated in an illegal investigation of at the foster mother's home.

30. Alma Aguirre a Social worker for Cps did an illegal warrantless strip search of the children in Sabrina's home.

31. Jackie Cirricione in a supervisor role for Cps oversaw the actions of her staff.

32. Lynn Heart assisted in the documents to take the children away and making false statements and misleading statements.

33. Ron Siegel gave false testimony, stating he was present during.

34. Elizabeth Overholt intentionally sent documents to the wrong addressee so Kevin Vale, Sabrina's Attorney wasn't able to properly defend Sabrina in dependency trial.

35. Karin Cather in her official role for the State had Social Services conducting interviews on the day of the trial of the children, knowing that the Garcia would not be able to get discovery from these interviews. She had a second trial even though Sabrina had won the dependency trial. Sabrina was to have services for her children returned. Karin Cather knew that all the evidence that she was using in the second trial was false and fictitious but it didn't matter she used Sabrina Deann Garcia's records to indicate to the judge that Sabrina was a deviant person. Then she asked for all of her rights to be removed at the beginning of the trial which took way Sabrina right to defend herself and by doing so, she lost all of her rights to a fair trial under the fourth amendment Fifth Amendment and the 14th amendment. Not allowing her to a fair just trial.

36. Rosa Chavarria gave false and misleading testimony.

37. Dr. Glen Moe gave false testimony in the trial stating he conducted an interview with the parents, but no interview ever took place.

38. Karina Lopez and Tammy M. Ruiz in their official roles for (Family Preservation), arranged a visitation for the natural father of K.,Domingo Baeza. Who had committed domestic violence and had a restraining order at the time. Eight days after this visitation they took the children from Sabrina Garcia without a Court order.

39. Brian Bowman in his official capacity as a social worker reported Sabrina Garcia as a runaway, in which his supervisor fired him.

40. Nancy Galvin a Cps case worker took an undocumented unwarranted foray toward Mexico with one of the Minor children.

41. Rosangela Alicea gave false testimony

42. Stephen Woo in his official capacity as a social worker took the children from their god parents at a local McDonalds without a warrant or probable cause. Proceeding to threaten the God Parents with the lost of their children if they tried to stop him from taking Sabrina's children.

43. Allyson L. Stefaniuk in her official capacity wrote an investigation about molestation, and filed a false report based on molestation that she knew hadn't occurred.

44. Leticia Holguin and Armando Holguin are Foster Parents who colluded with Cps in the seizing of the Garcia children. The foster parents gave K. an STD, J. had marks around his neck, black eyes, belt marks on his bottom. Social worker Tresha hunter was told about Aierl falling off back of truck the bump on her forehead and the mark under chin. L. was locked in room for two hours an gave shock bracelet so she could follow their rules. Dr Glen Moe had seen the children in foster parent's family setting.CPS use his finding about them as if it was Sabrina and not the foster mother.

45 Ms. Rachel Lee made false report to cps an told Sabrina's daughter l. that she was going to live with her.

46. Marie Toni Baeza gave false testimony.

47. Jeffery Meyer gave false testimony.

48. Judge Uderal did not protect forth amendment Fifth Amendment in 14th amendment of Sabrina and the children.

49. The Defendants improper and abuses of the Judicial System in the taking or Seizing of Sabrina's children should not take her standing as a parent in regards to this Complaint. For if their defense is that Sabrina has no rights to bring this Complaint in their behalf because they illegally took the children and ended her parental rights. Then who will stand up for the children and we request the Court to appoint a Guardian ad Litem.

50. David Lee destroyed documents so he could not be properly defend Sabrina Garcia, and she could not have a fair trial in regards to her children because of this.

51. Evidence from discovery will strongly indicate that the reasons for the record setting numbers of violations inflicted upon plaintiff by Arizona, Phoenix officials and their employees arose from a convoluted scheme concocted somewhere high in the Arizona Department Of Economic Security, and Child Protective Services to destroy and strip plaintiff of her children and strip them of rights they are entitled to under the Constitution Of The United States.

52. CPS in court documents during the trial claim they contacted Sabrina's relatives to find placement for the children, the relatives they claimed to have contacted had all passed away. One must ask why; Child Protective Services has a financial incentive to take children into custody and adopt them out rather than return them. Why? They get money from the Federal government for every child in custody, and they get money if the child is adopted. So what do you think they do? For one, they are more likely to take children into custody in the first place. And second, they are more interested in taking children they can easily adopt out. On December 30th, Sabrina realized 2013 a C.P.S. worker came to Sabrina home and in front of 4 witnesses told Sabrina that her 4 children were already adopted and apologized about way the children had been taken away. "She couldn't change what had happen to the children and CPS will not do anything to make thing right, even if they did wrong. Sabrina realized they knew they had abused the system at this point. K. had gotten an std in the foster parent's home from the foster parents. CPS did not have the best interest in the Children by not moving them to a safe place."

53. The PLANTIFF", UNDERSTANDING THAT THEY ARE REQUIRED TO KEEP THIS COMPLAINT AS LIMITED AS THEY CAN, AND ADVISING THIS HONORABLE Court that discovery will be required to sort out who did what to Who, detailing specific infractions and violations of rights by the Defendants.

54. It is the Plaintiff allegation that Defendant Arizona Department Of Economic Security, parent of Defendant CPS, Defendant CPS and the Defendants listed herein this complaint and other yet to be identified individuals, were under color of statutes, ordinances, regulations and custom of Arizona.

55. It is Plaintiff allegation that there are yet unidentified individuals such as the Police Officers and several unidentified individuals, who, under color of law, assisted in the cause and actions of the events as described herein above. And believe that only Discovery will allow these individuals to be identified.

56. Plaintiff, though not "arrested", where harmed and had their rights to Due Process, Protection Against Unreasonable Search And Seizure, specifically and performing search and seizures without warrant, and creating terror and fear and inflicting great distress and emotional harm.

57. At all times relevant herein, the conduct of all the Defendants were subject to 42 U.S.C. secs. 1983, 1985, 1986, and 1988.

58. Acting under the color of law, Defendants worked a denial of Plaintiffs rights, privileges or immunities secured by the United States Constitution or by Federal law, to wit,
Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); McNamara v. Honeyman, 406 Mass. 43, 52 (1989).

(a) by depriving Defendants of their liberty without due process of law, by taking them into custody and holding him there against their will,
County of Sacramento v. Lewis. 523 U.S. 833 (1998); Youngberg v. Romeo, 457 U.S. 307, 315 (1982
(b) by making an unreasonable search and seizure of their property without due process of law,
(c) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Defendants equal protection of laws,
(d) by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of their rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

59. Plaintiffs incorporate the attached Exhibits and Affidavits # 1 through 57 into this Complaint by reference as if set forth herein.

## CLAIMS FOR RELIEF

60. Plaintiffs realleges and incorporates by reference each and every allegation contained in Paragraph 1 through 24 above, inclusive, as though fully set forth.

61. COUNT ONE: CONSPIRACY TO DENY PLAINTIFFS CIVIL RIGHTS
Defendants' above-described, acting in collusion, with predetermination, conduct under color of law, and with particularly the acts, commissions and omissions of the conspirators in preparing and mailing fraudulent documents in order and the subsequent detention by Police and CPS Workers, combined with the custodial maltreatment of the plaintiffs, violated the plaintiffs' rights to be free from unreasonable searches and seizures, and equal protection of the laws and to due process under the First and Fourteenth Amendments to the United States Constitution.

62. COUNT TWO DEPRIVATION OF RIGHTS
Defendants' above-described, acting in collusion, with predetermination, conduct, and particularly the acts, commissions and omissions of the conspirators, and of the command, supervisory and rank-and-file defendants in ordaining, be free from unreasonable searches and seizures, and equal protection of the laws and to due process under the First and Fourteenth Amendments to the United States Constitution.

63. COUNT THREE: VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION 42 U.S.C. §1983
Defendants' above-described conduct, and particularly the acts and omissions of those defendants involved. Plaintiff as outlined in their Affidavits, violated plaintiffs' rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution U.S.C. §1983

64. COUNT FOUR: VIOLATION OF FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION 42 U.S.C. §1983
Defendants' above-described conduct, and particularly the custodial maltreatment of plaintiffs, including but not limited to the conduct described, violated plaintiffs' rights to equal protection of the laws and to due process of law under the Fourteenth Amendment to the United States Constitution.

65. COUNT FIVE: WARRANTLESS ENTRY

Cps Investigated and Interview the Children on Private Property without Exigent Circumstances or Probable Cause. The decision of the 7th Circuit Court of Appeals found that this practice, i.e. the "no prior consent" interview of a child, will ordinarily constitute a "clear violation" of the constitutional rights of parents under the 4th and 14th Amendments to the U.S. Constitution. According to the Court, the investigative interview of a child constitutes a "search and seizure" and, when

conducted on private property without "consent, a warrant, probable cause, or exigent circumstances," such an interview is an unreasonable search and seizure in violation of the rights of the parent, child, and, possibly the owner of the private property. *Doe et al, v01-2003 US App. Lexis 7144) 3648. Heck et al (No.,* The mere possibility of danger does not constitute an emergency or exigent circumstance that would justify a forced warrantless entry and a warrantless seizure of a child. *Hurlman v. Rice, (2nd Cir. 1991)* A due-process violation occurs when a state-required breakup of a natural family is founded solely on a "best interests" analysis that is not supported by the requisite proof of parental unfitness. *Quilloin v. Walcott, 434 U.S. 246, 255, (1978*

66. COUNT SIX: FALSE ARREST AND FALSE IMPRISONMENT
Defendants' above-described conduct constitutes false arrest and/or false imprisonment of plaintiffs. As a direct and proximate result of said false arrest and/or false imprisonment, plaintiffs suffered general and special damages in an amount to be proven at trial.

67. COUNT EIGHT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Defendants' above-described conduct was extreme, unreasonable and outrageous. By engaging in such conduct, defendants intentionally ignored or recklessly disregarded the foreseeable risk that plaintiffs would suffer extreme emotional distress as a result of defendants' conduct. As a proximate result of said conduct, plaintiffs suffered severe emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort and humiliation, all to their general damage in an amount to be proven, and incurred special damages in an amount to be proven.

68. COUNT NINE: NEGLIGENCE
Defendants had a duty to properly hire, train, oversee, supervise and discipline their agents, employees and social workers so as to prevent violations of plaintiffs' constitutional, statutory, and common law rights and to prevent physical injury to plaintiffs, and a duty to use their powers and equipment properly to avoid harm to plaintiffs. By the conduct described above, defendants breached the duty of care owed to plaintiffs and proximately caused them general and special damages in an amount to be proven.

69. COUNT TEN: SEIZURES" UNDER THE FOURTH AMENDMENT

Child removals are "seizures" under the Fourth Amendment. Seizure is unconstitutional without court order or exigent circumstances. Court order obtained based on knowingly false information violates Fourth Amendment. *Brokaw v. Mercer County, (7th Cir. 2000)* Defendant should've investigated further prior to ordering seizure of children based on information he had overheard. *Hurlman v. rice, (2nd Cir. 1991)* Police officer and social worker may not conduct a warrantless search or seizure in a suspected abuse case absent exigent circumstances. Defendants must have reason to believe that life or limb is in

immediate jeopardy and that the intrusion is reasonably necessary to alleviate the threat. Searches and seizures in investigation of a child neglect or child abuse case at a home are governed by the same principles as other searches and seizures at a home. *Good v. Dauphin County Social Services, (3rd Cir. 1989)* Defendants could not lawfully seize child without a warrant or the existence of probable cause to believe child was in imminent danger of harm. Where police were not informed of any abuse of the child prior to arriving at caretaker's home and found no evidence of abuse while there, seizure of the child was not objectively reasonable and violated the clearly established Fourth Amendment rights of the child. *Wooley v. City of Baton Rouge, (5th Cir. 2000)* For purposes of the Fourth Amendment, a "seizure" of a person is a situation in which a reasonable person would feel that he is not free to leave, and also either actually yields to a show of authority from police or social workers or is physically touched by police. Persons may not be "seized" without a court order or being placed under arrest. *California v. Hodari, 499 U.S. 621 (1991)*

70.             **EQUITABLE TOLLING**

**Any statue of Limitations argument by the defendants becomes moot as they intentionally concealed the fact finding process from the** Plaintiffs . Equitable **tolling**, this principle of law stating that a statute of limitations shall not bar a claim in cases where the Plaintiff, despite use of due diligence, could not or did not discover the injury until after the expiration of the limitations period.

It has been held that equitable tolling applies principally if the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his or her rights. However, it has also been held that the equitable tolling doctrine does not require wrongful conduct on the part of the defendant, such as fraud or misrepresentation. In this case the Defendants willfully committed fraud in their case in chief and by so doing deprived the Plaintiffs their Constitutional rights.

PRAYER FOR RELIEF

Wherefore, plaintiffs pray for relief as follows:
A. An award of compensatory and general damages against defendants and each of them, in an amount to be determined according to proof;
B. An award of exemplary and punitive damages against all defendants sued in their individual capacities in an amount to be proven at trial;
C. An award of statutory damages and penalties pursuant to 42 U.S.C Sec1985 and 42 U.S.C Sec. 1983;
D. An award of plaintiffs' costs, expenses and reasonable attorney's fees pursuant to 42 U.S.C. §1988;

E. The return of Minor children to their birth Mother. As proof will bear out C.P.S. had no legal right to put the children up for adoption, making the adoptions illegal.
F. Trial By Jury; and such other and further relief as the Court may deem just and proper.

Respectfully submitted,
The undersigned, being duly sworn, deposes and says that we are the Plaintiffs herein, and have read the foregoing pleading filed on our behalf, and the facts stated therein are true.

12/22/15

SABRINA GARCIA
139 West Elwood
Phoenix Az. 85041
Pro se

DATED: 12/22/2015
Subscribed and sworn to before me, this 22th day of December 2015.
Notary Public

ELVIA RAMIREZ
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
March 1, 2017

EXHIBIT LIST
1) Letter dated march 28th 2011, CPS report #583323
2) Letter dated November 15th 2012 CPS failed to provide documents.

# DEPARTMENT OF ECONOMIC SECURITY
*Your Partner For A Stronger Arizona*

1789 W Jefferson - P.O. Box 6123 - Phoenix, AZ 85005

Janice K Brewer
Governor

Clarence Carter
Director

March 28, 2011

Sabrina Garcia
139 W Elwood St
Phoenix, AZ 85041-1224

Dear Ms. Garcia:

This is to inform you that the Department of Economic Security (DES) has unsubstantiated the finding for Child Protective Services (CPS) report #583323, dated 06/21/2010. The finding will not be entered in the central registry and no further action will be taken by the Protective Services Review Team.

Services offered or provided to the family include: case management and Forensic victim services.

Sincerely,

Bruce Nittle
Regional Review Specialist
Protective Services Review Team
Division of Children, Youth and Families

c.c. File 2/2011



# Maricopa County Office of the Public Advocate
## Dependency Division

CHRISTINA PHILLIS
THE PUBLIC ADVOCATE

November 15, 2012

Ms. Sabrina Garcia
139 W. Elwood Street
Phoenix, AZ 85041

Re:    JD509003

Dear Ms. Garcia:

The attached letter means CPS may have failed to disclose/provide all documents in your case. It is possible that this may allow your case to be re-opened. If you would like to discuss this possibility please contact me at 602-372-2815.

I cannot take further action without speaking with you first.

Sincerely

David Lieb
Attorney
Office of the Public Advocate

777 W. Southern Avenue Suite 101
Mesa, AZ 85210
602-372-2815 Main • 602-372-8919 Fax

*Safeguarding the rights of citizens involved in Juvenile and Mental Health Court*

3131 W. Durango
Phoenix, AZ 85009
602-372-9560 Main • 602-372-8918 Fax

## WITNESS LIST

A.G.
L. G.
J.G.
JOHN GARCIA SR.
TIFFANY TAYLOR
DANIEL GILDAY
RAPH CONTERA
GREGORY MALKIN
KEVIN VALE
SUSAN LOMBRESS
DEAN TONY
NANCY WITWALL
DR. GLEN MOE
ANGELA POTTER
ARTHER DAVIS
NAT LOVE
DELORES JIRON ALMA
ANN MILLER
JANE PARKER
SUSA TALTZ
DR. MARC WALTER
JEANY EKSTORM
NELLIE CLOTTER
JOHN POPILEK